Staples, J.,
delivered the opinion of the court.
The alleged right of recovery in this case is founded upon a provision in the deed from Charles Alexander to the Washington and Alexandria turnpike company. That provision is as follows: “In consideration of which cession, thé said president and directors for themselves, and their successors in office, hereby promise and agree that the said space of ground, one hundred feet wide, shall be forever kept open and unobstructed as a public highway, and for no other purpose whatever without the consent of the said Alexander, his heirs and assigns, in writing first had and obtained; and also should the route of the said turnpike road be hereafter altered, or should it ever cease to be a public highway, the property shall thereupon immediately revert to the said Alexander, his heirs and assigns.”
It is insisted that the deed executed by the turnpike company to the Alexandria and Washington railroad company was, ipso facto, a breach of this provision, creating a forfeiture of the estate.
*552 And secondly, if this he not so, the construction of the railroad track upon the turnpike certainly had that because such appropriation and use are utterly ^o^tent with the use of the soil for the purposes of a highway.
Before considering these propositions, it is well to kear in min(j that if a forfeiture has taken place it occurred in the year 1856, at which time the railroad was constructed. The company was permitted to locate and build its road,- and to incur all the expense incident to an enterprise of that character, without objection from any one, so far as the record before us discloses; and now after the lapse of sixteen years the representatives of the original grantor for the first time assert the existence of the supposed forfeiture. If their claim is sustained, the effect will be to cut asunder the railroad track, and to vest in the plaintiffs not only the soil, but all the works of the company, to the extent of three-fourths of a mile. But this is not all. If there has been a forfeiture, it will operate to revest in the representatives of Charles Alexander the entire estate, being the one hundred feet conveyed to the turnpike company by the deed of 1809. It is very true that this suit extends only to the fifty feet conveyed to the railroad company; but if the heirs chose to assert title hereafter to the whole, there is strong ground to believe the claim would be successful, so that the part still used as a turnpike will be lost to the public.
A result which thus injuriously affects public and private interests to so great an extent ought not to be tolerated unless required by some imperative rule of law operating upon the contract of the parties. Clearly there is nothing in the terms of Charles Alexander’s deed, already cited, forbidding or restraining *553 Rn alienation by the turnpike company, so long as the terms of the grant are substantially complied with. So long as the route conveyed is used for the of a highway, it is a matter of no sort of consequence to the grantor or his representatives whether the turnpike company or its alienees hold the title.
The only question we have then to consider is, whether the construction of the railroad is such a diversion of the land conveyed to the turnpike company by Alexander as constitutes a forfeiture.
The learned counsel for the appellee, in a very elaborate note, takes the ground that a railway is so essentially and radically different from an ordinary turnpike, that the two cannot be used and operated on the same space of ground, one hundred feet wide, with any safety to travelers on the turnpike. All this may be true, and yet it does not follow that the construction of the railroad track upon the turnpike necessarily supersedes, or even interrupts, the latter as a highway, lío question has been productive of more controversy than this. On the one hand, it is argued that the owner of the land is not divested of the fee by laying ■out the soil as a highway, and that the public only acquires thereby an easement; that the location of a railroad thereon is an increased burden upon the fee, and the appropriation of the surface, for the purposes ■of a railway, is inconsistent with the free and unrestricted user by the public of the soil as a highway, and for this increased burden upon the fee the owner is entitled to compensation.
On the other hand, it has been argued that the construction of a railway along a highway, or upon the ■streets of a city or town, is simply a mode of accomplishing one of the objects of the original dedication, that of creating a thoroughfare for the public, and *554 that the railway is but a species of improved highway, the two uses being substantially identical; and there-' the legislature may authorize (as in the case before-us) the construction of a railway on a public highway, and the inconvenience thereby incurred by the citizen must be borne for the sake of the public good. '
■ Controversies of this character must generally if’ not universally arise in those cases in which the owner has subjected the .land to an easement, and the point of contention is as to his right to compensation for the increased burden upon the fee by reason of the construction of the railway.
Whether in the present case the owner has parted with the fee, and is therefore not entitled to compensation, is a question we are not called on to decide at this time; nor is it necessary to determine whether the turnpike company is liable in damages to an action of covenant for the failure to keep open and unobstructed' as a highway the entire width of one hundred feet conveyed. The question we have to deal with is one of forfeiture exclusively. It may be that the operating the railroad subjects travelers on the turnpike to inconvenience, and even to danger; but the turnpike is none the less a highway by reason of the fact. It does not necessarily cease to be a highway because the track of the railroad may be laid upon a portion of the one hundred feet, to any greater or less degree than a street of a city ceases to be a street because of the location of the railroad thereon.
We must not lose sight of the fact, that we are considering, not a question of compensation for increased burdens and inconveniences, but of forfeiture for a breach of condition subsequent; always rigidly construed. The language of the deed is, “should the route of the said turnpike road be hereafter' altered, *555 or should it ever cease to be a public highway, the property shall thereupon immediately revert,” &e. How it is apparent from the facts certified, that the turnpike still used as a highway. It has never ceased to be such. The graveled way is untouched, and so is one of the summer roads. It is true that the track of the railroad, eight feet in width, is laid upon the other summer road. But there is no obligation on the company to keep up two summer roads or even a summer road. The charter only prescribes that the width of the road shall not be less than thirty nor more than one hundred feet. If there are obstructions or irregularities upon other portions of the one hundred feet, making the passage of carriages sometimes difficult, they proceed from the carelessness and inattention of the turnpike company, or those having charge of its road. The remedy for such evils is in the courts by indictment, information or other proper proceeding. The only portion of the land actually occupied by the railroad is the bed or track eight feet wide. If it appeared that this strip cannot be used as a highway, it is manifest there is still abundant space for all the purposes of the travelling public; more than has ever been or ever will be required. If the people who use the route are subjected to some inconvenience by reason of the passage of the trains, they are in no worse condition than the inhabitants of many towns and cities and counties. Outside of the limits of the three-fourths of a mile conveyed by Alexander, all along the route between Washington city and Alexandria, travellers upon the turnpike are more or less exposed to the same inconveniences and perils.
When the grantor seeks to destroy an estate which he himself has created, it must plainly appear'that the act is within the very terms of the condition and *556 breach. It is not sufficient to show mischiefs and even losses which might have been provided against they been foreseen. The fact that they were not and could not have been anticipated, may be a sufficient reason for the failure to provide a remedy; but they cannot justify the courts in so enlarging the opera¿ion of the covenant as to make them a ground of forfeiture.
The learned counsel for the appellee relies much upon that provision of the deed, which declares “that the said space of ground, one hundred feet wide, shall be forever kept open and unobstructed as a highway;” and he insists.that the parties meant thereby “that a turnpike road one hundred feet wide should be made, kept open and unobstructed in its entire width for all time, and that if any portion of the space should be obstructed and cease to be used as a turnpike road, the whole should revert to the grantor or his heirs. According to this construction, a road one hundred feet wide was necessary to be made, kept open and clear of all obstructions for all time, whether required or not by the public wants and necessities; and that too notwithstanding the charter left it optionary with the company to determine the width of its road, so that it was not less than thirty nor more than one hundred feet. If this be the correct view, a forfeiture occurred long before the construction of the railroad, because it is, I think, very manifest that the actual width of the road was never at any time as great as one hundred feet. Under this construction, a failure to grade and use as a road a narrow strip of ten feet would result in the forfeiture of the whole, even though the remaining ninety feet was used as a highway, and was more than sufficient for all the demands of the public. It is impossible to believe that such was the intention *557 of the parties. If the provision admits of no other . , interpretation than an agreement to construct a turnpike of the width of one hundred feet, and so tain it forever, although wholly unnecessary, it will be construed as a covenant, the breach of which is compensated in damages and not by a forfeiture of the entire estate. This construction saves the rights the public, and is more consistent with the real intention of the parties. They did not mean that the entire width of a hundred feet, every parcel of it, should be graded and constructed as a road and so maintained forever, whether required or not by the necessities of trade and travel. All they designed was, that the land should not be diverted to any mere private or individual ends, but that it should be held for the purposes of a public highway, and used as the public necessities might require. Any failure of proper repair, any mere obstructions upon the road tending to the inconvenience of the public, might constitute a breach of covenant sounding in damages; but nothing short of a discontinuance of the route as a highway constitutes a ground of forfeiture.
This view is in entire harmony with all the principles of law in regard to forfeitures. The rule laid down in the cases, and sustained by all the authorities is, that conditions subsequent are strictly construed, because they tend to destroy estates, and a rigorous exaction of them is a species of summum jus, and in many cases hardly reconcilable with conscience. In McKelvay v. Seymour, 5 Dutcher R. 321, a well considered case, the supreme court of New Jersey decided that “ where land is conveyed to be used for a certain purpose, with a clause of forfeiture if it cease to be used for the object specified, it is no ground of forfeiture if the laud is used for other purposes, pro *558 vided it is also used for the purpose for which it was n ,, CODVeyeCl.
In Jackson v. Silvernail, 15 John R. 278, a lessee for lives covenanted not to sell, or assign, or dispose of his estate in the premises without permission. He nevertheless executed a deed demising part of the for twenty years. The supreme court of New York held this did not constitute a forfeiture. Plait, J. said, “the plaintiff’s claim is stricti juris; and to entitle him to recover on the ground of forfeiture, he must bring his case within the penalty, on the most literal and rigid interpretation of the covenant; that a lease of part of the land for a term of years was not a sale or assignment of the estate in the premises.” And yet it is easy to see that such an alienation of part was, as to such part, a violation of the whole spirit of the contract, and the intention of the parties. See also Hunt v. Beeson, 18 Ind. R. 380; Emerson v. Simpson, 4 New Hamp. R. 475; Bolling v. Mayor &c. of Petersburg, 8 Leigh, 224. I refer particularly to the case of Emerson v. Simpson, where a number of cases are cited by the learned judge, in confirmation of the doctrine that the object of the courts is so to construe the covenant as to prevent, if possible, a forfeiture; and therefore the extent and meaning of conditions defeating estates are considered as questions striciissimi juris.
In the case in hand the same rule of construction very justly applies. The result attains the ends of justice, and I think is conformable to the real intention of the parties. Upon the facts as stated in the record, the court ought to have given the instruction asked for by the defendant, and not that asked by the plaintiff.
*559 The judgment was as follows:
The court is of opinion, for reasons stated in Ing and filed with the record, that the circuit court ought not to have given the instruction asked for by the plaintiffs; but instead thereof, ought to have instructed the jury as prayed for by the defendants. Wherefore, for the errors aforesaid, it is considered by the court here, that the said judgment be reversed and annulled, the verdict set aside, and a new trial awarded; and that the defendants in error pay to the plaintiffs in error their costs by them expended in the prosecution of their writ of error and supersedeas here.
And it is further considered, that the ease he remanded to the circuit court for a new trial therein to be had in conformity with the views herein expressed.
Judgment reversed.